# Exhibit  A

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

IN RE:

NHG LIQUIDATION, INC., f/k/a
NAPA HOME & GARDEN, INC.,

             Debtor.

CHAPTER 11

CASE NO. 11-69828-jb

## MOTION FOR ESTABLISHMENT OF LIQUIDATION PROCEDURES FOR PERSONAL INJURY CLAIMS

**COMES NOW** Karen Fagin White, Chapter 11 Trustee in the captioned case, (the "Trustee") and respectfully moves this Court for the entry of an order approving of certain procedures for liquidation of the personal injury claims against the captioned Debtor (the "Debtor" or "Napa"), and approving of Rodney A. Max, Esq. to assist with liquidation of such claims.  In support of this Motion, the Trustee respectfully shows the Court as follows:

### BACKGROUND

1.      On July 5, 2011 (the "Petition Date"), the Debtor filed the captioned Chapter 11 case.  On July 19, 2011, Karen Fagin White was appointed Chapter 11 Trustee.

2.      Primarily before the Petition Date, certain fire and burn incidents occurred involving "firepots" and the related "gel fuel" that the Debtor had sold on a wholesale basis.  The Trustee has learned of the following: [1]

---

[1]  The numbers in (a) and (b) are approximate and they are presented by the Trustee based on incident-related information that was received from the Debtor and, more recently, the Debtor's insurance carriers, for the period through March 1, 2012.

a.    115 pre-bankruptcy incidents, 97 pre-bankruptcy injuries, and 2 pre-bankruptcy deaths; and

b.    6 post-bankruptcy incidents, 5 post-bankruptcy injuries, and no post-bankruptcy deaths.

3.    As of February 28, 2012, the Trustee was aware of fifteen (15) lawsuits, filed in various courts, in which the Debtor has been named either as a main case defendant or as a third-party defendant, the lawsuits claiming personal injuries that allegedly incurred as a result of firepot and/or gel fuel incidents.  Some of these lawsuits have multiple plaintiffs.

4.    Numerous individuals hold personal injury, wrongful death and/or property damage claims against Napa (collectively, the "Personal Injury Claimants," as more fully defined in EXHIBIT 1 attached hereto).  Numerous Personal Injury Claimants have filed proofs of claim in this bankruptcy case, with claims totaling in the many millions of dollars.  The claims bar date passed on April 2, 2012.

5.    The Trustee anticipates that the allowed claims of the Personal Injury Claimants will be satisfied, for purposes of this bankruptcy case, (a) from the proceeds of six (6) prepetition insurance policies of the Debtor (collectively, the "Policies") and (b) along with the general unsecured claimants, from the Estate's other assets (primarily the proceeds of the August 2011 section 363 sale of the Debtor's assets).  The distributions to be made in this bankruptcy case will be sufficient to pay only a fraction of the value of the claims held by the Personal Injury Claimants.

6.    On April 18, 2012, this Court (Judge Bihary) entered an ORDER GRANTING MOTION FOR APPROVAL OF COMPROMISE AND SETTLEMENT WITH AMCO

INSURANCE COMPANY AND ALLIED PROPERTY AND CASUALTY COMPANY (doc. 377). The Court approved a settlement agreement, under which the Trustee and the insurers that issued the Policies settled the coverage under the Policies. The settling parties agreed in pertinent part (stating in summary):

     a.     that the amount of $15,000,000 of the insurers' $15,100,000 settlement payment to the Trustee would be utilized for subsequent distribution to the personal injury, property damage, and wrongful death claimants, in settlement of all claims of such claimants, other than their claims against the general funds of the Estate, because of "bodily injury" or "property damage" arising out of the use of the Debtor's Firelite products;

     b.     that $100,000 of the settlement payment may be directed to expenses incurred by a professional neutral to be appointed to help liquidate such claimants' claims, and for insurance-related Trustee fees and expenses.

7.     The Trustee and counsel representing the vast majority of the Personal Injury Claimants have held numerous and detailed discussions about the best methodology for liquidating the claims of the Personal Injury Claimants. The proposed methodology to which they have agreed is set forth in the PROPOSED PROCEDURES FOR LIQUIDATION OF PERSONAL INJURY AND PROPERTY DAMAGE CLAIMS (the "Proposed Procedures"), attached hereto as EXHIBIT 1. Following is a summary of certain key terms within the Proposed Procedures:

     a.     The Personal Injury Claimants (as defined in the Proposed Procedures) shall submit to the Third Party Neutral (proposed to be Rodney Max, Esq. as discussed below) the supporting materials that the Third Party Neutral requests. "Failure to submit

the appropriate form and the majority of the supporting materials by the applicable deadline, absent a pre-deadline extension granted in writing by the Third Party Neutral, shall result in the Claim being barred and waived." [2]

      b.      The Third Party Neutral reviews the submitted materials.

      c.      The Third Party Neutral conducts an interview of a Personal Injury Claimant if a claimant requests.

      d.      The Third Party Neutral awards damages based on the extensive factors set forth in the Proposed Procedures, and the awards are subsequently totaled in order to determine the pro rata distribution from the $15,000,000 in insurance proceeds being paid to the Trustee.

      e.      The Third Party Neutral notifies the Personal Injury Claimants of the pro rata distributions and provides an explanation.

      f.      Upon request by a Personal Injury Claimant, the Third Party Neutral provides further explanation of the decision.

      g.      Personal Injury Claimants may request reconsideration of the award and the Third Party Neutral responds following his reconsideration.

      h.      The Third Party Neutral notifies the Bankruptcy Court of his awards and requests a hearing before the Court. [3]

---

[2]    Attached as exhibits to the Proposed Procedures are questionnaires for distribution to the Personal Injury Claimants, for their submission of claim support information to the Third Party Neutral.

[3]    Following the completion of the Third Party Neutral's award process, the Trustee will request this Court to allow, for purposes of this bankruptcy case (only), the claims of the Personal Injury Claimants, in the amounts awarded by the Third Party Neutral.

i.      Upon an Order confirming the Third Party Neutral's awards, the $15,000,000 earmarked for the Personal Injury Claimants are promptly disbursed to the Personal Injury Claimants.

j.      The Third Party Neutral's award, conclusions, and/or product shall not be utilized by any Personal Injury Claimant or other party, for the purpose of establishing payments to such claimants by any person or entity other than Debtor's bankruptcy estate, absent prior written permission of the Trustee.

8.    The Trustee is informed by counsel representing the vast majority of the Personal Injury Claimants that each their Personal Injury Claimant clients:

a.      agree to the Proposed Procedures set forth on <u>EXHIBIT 1</u>, including the process for liquidation of their claims for all purposes in this Chapter 11 case, including, without limitation, Chapter 11 plan voting, plan confirmation, and distributions;

b.      agree, with regard to their claims in this bankruptcy case, to waive any jury rights they may otherwise hold [4] and any rights to a trial in the district court, assuming they actually receive distributions under the Proposed Procedures; and

c.      agree that, to the extent this claim liquidation procedure matter is non-core, this Bankruptcy Court may nevertheless enter findings of fact and conclusions of law on the matter.

---

[4]    Section 1411(a) of Title 28 states that "[e]xcept as provided in subsection (b) of this section [not applicable], this chapter and title 11 do not affect any right to trial by jury that an individual has under applicable nonbankruptcy law with regard to a personal injury or wrongful death tort claim." 28 U.S.C. § 1411(a).

## DISCUSSION

The Trustee believes there exists no need for the Estate to litigate in response to claims by Personal Injury Claimants against the Estate in uncoordinated, separate, and protracted lawsuits throughout the country. Liquidation of the claims in such a manner would unduly delay the administration of this Chapter 11 case. It would also deplete the finite assets available for distribution to the creditors. On the other hand, the claims liquidation method proposed in this Motion would help ensure an efficient and prompt administration of the Chapter 11 case. The procedure, if approved, will enable Personal Injury Claimants – many of them facing substantial and continuing medical bills and having suffered substantial damages -- to receive distributions far sooner than after the conclusion of lawsuits.

The Trustee believes the Estate has substantial liability exposure to the Personal Injury Claimants, and the Estate should not expend its finite resources defending on the issue of liability to the Personal Injury Claimants. The damages incurred by the Personal Injury Claimants greatly exceed the funds that will be available to them in this bankruptcy case, and the Estate's resources should be dedicated toward a fair and prompt method for deciding the amount of the claims for purposes of distribution from the limited pool of funds, and toward other Chapter 11 purposes.

The Trustee believes that the liquidation method proposed herein is best suited for the circumstances of this particular case, and the Trustee understands from counsel representing the vast majority of the Personal Injury Claimants that such claimants agree to the proposed liquidation method.

This Court is respectfully requested to approve the proposed liquidation-related procedures, and to utilize the amounts determined thereunder, for claims allowance for the purposes of plan voting, plan confirmation, and distribution to the Personal Injury Claimants.

**Proposed Appointment of Expert**

To assist in the claims liquidation process, in that quantifying the personal injury damages is a complex process, the Trustee requests that the Court appoint Rodney Max (Mr. Max), of the Upchurch Watson White & Max law firm, as an expert, more particularly, as the Third Party Neutral identified in the Proposed Procedures. The Trustee and the Personal Injury Claimants represented by the steering committee agree to Mr. Max serving as such, and Mr. Max consents.

Federal Rule of Evidence 706(a) provides:

> **(a) Appointment Process.** On a party's motion or on its own, the court may order the parties to show cause why expert witnesses should not be appointed and may ask the parties to submit nominations. The court may appoint any expert that the parties agree on and any of its own choosing. But the court may only appoint someone who consents to act.

Fed. R. Evid. 706(a); see also In re Joint E. & S. Districts Asbestos Litig., 830 F. Supp. 686 (E.D. N.Y. 1993) (appointment of an expert pursuant to FRE 706 on estimation of future asbestos claims); In re Joint E. & S. Dist. Asbestos Litig., 982 F.2d 721, 750 (2d Cir. 1992), opinion modified on reh'g, 993 F.2d 7 (2d Cir. 1993) ("we have no doubt of the Court's authority to exercise its bankruptcy court powers to appoint experts to advise it on matters that concern the ongoing administration of the Chapter 11 proceeding.")

"Rule 706, Fed.R.Evid. provides the court with discretionary power to appoint an expert witness either on the court's own motion or the motion of a party." <u>Steele v. Shah</u>, 87 F.3d 1266, 1271 (11th Cir. 1996).

Rodney Max, Esq. has thirty-five (35) years of trial and mediation experience. He specializes in mediation and arbitration of mass torts. He is an expert in the liquidation of mass tort claims. His <u>curriculum vitae</u> is attached hereto as <u>EXHIBIT 2</u>.

Mr. Max would charge the amount of $10,000 per day multiplied by the number of days that are reserved for claims liquidation purposes. Mr. Max expects to conduct interviews on each of the days that are reserved. [5] These charges shall cover all Third Party Neutral services contemplated in the Proposed Procedures, from review of initial information provided, through the award stage. The exception to the flat fee to which Mr. Max has agreed is any fees incurred by Mr. Max to attend court hearings, in which case the charges will be for court appearance time and travel, billed at the hourly rate of $575, plus travel costs. Thirteen (13) days are currently reserved with Mr. Max, and Mr. Max anticipates that the final total number of days will be between 10 and 13 days, based on the current estimate that 70 or fewer claims will be liquidated through the Proposed Procedures. [6]

---

[5]    The Trustee and the Estate would not defend or participate in the Third Party Neutral's liquidation proceedings.

[6]    To move the claims matters toward awards and distributions as promptly as possible, the Personal Injury Claimant steering committee has requested Mr. Max to complete some, possibly most, of the interviews in May, in the hopes that this Court will approve the Proposed Procedures. Mr. Max has agreed.

Mr. Max would render most of the services; however Brad Wash, Esq. of the Birmingham office of Mr. Max's law firm would assist.   Mr. Wash's involvement is included in the financial arrangement described above.

Payments to Mr. Max would be made first from the $100,000 portion of the Estate's settlement with Debtor's insurers.   To the extent Mr. Max's charges exceed said amount, the payment would be made from the general funds of the Estate.

Due to the compressed time period that is contemplated from the time of claim information submissions to the claim awards, the Trustee requests authority to remit payments to Mr. Max for the charges described (including advance deposits), without the necessity of further orders.   If charges vary from the foregoing terms, the Trustee will seek advance authority to pay any such charges.

**Core/Noncore**

28 U.S.C. § 157(b)(2)(B) states that core proceedings include:

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11.

Nevertheless, "[p]arties may, even after *Stern [Stern v. Marshall],* consent to bankruptcy courts entering final judgments in non-core matters. In fact, [28 U.S.C.] section 157(C)(2) expressly authorizes bankruptcy courts to enter final judgment in non-core proceedings if the parties consent." In re Safety Harbor Resort & Spa, 456 B.R. 703, 718 (Bankr. M.D.Fla. 2011). "Where a bankruptcy court acts in a non-core proceeding, a final order may be issued only in one of two ways: by the district court after *de novo* review of the bankruptcy court's proposed factual findings and legal conclusions, §

9

157(c)(1); or by the bankruptcy court with the consent of the parties, § 157(c)(2)." Cent. Vermont Pub. Serv. Corp. v. Herbert, 341 F.3d 186, 190 (2d Cir. 2003).

To the extent this Court may find that the liquidation-related requests in this Motion involve any non-core matters, the Trustee understands from counsel representing the vast majority of the Personal Injury Claimants that their claimant clients consent to this Bankruptcy Court entering a final order regarding the liquidation of their bankruptcy claims, for all Chapter 11 plan and distribution purposes, assuming they actually receive the distributions contemplated in the Proposed Procedures.

The Trustee believes that the process set forth in this Motion represents a fair resolution with the Personal Injury Claimants and the best methodology to determine the personal injury claims.

## NOTICE

This Motion and its exhibits (including the detailed Proposed Procedures in EXHIBIT 1) and the Notice of Hearing, are being served on all personal injury, wrongful death and/or property damage claimants and their attorneys, known to the Trustee. Should this Motion be granted, the Trustee will serve the Order on all of them as well.

Said filings are also being served on each retailer which sold an item of Napa product that allegedly caused a particular personal injury and/or wrongful death incident, known to the Trustee; and on the entities and persons listed in the Master Service List maintained by the Trustee in accordance with this Court's Order Regarding Notice Procedures, entered on September 8, 2011 (doc. 177).

The Trustee submits that, in light of the relief requested, no other or further notice need be provided.

**WHEREFORE,** the Trustee respectfully requests that the Court enter an Order:

    (a)      approving the Proposed Procedures regarding the liquidation of the Personal Injury Claimants' claims against the Debtor;

    (b)      appointing Rodney Max, Esq. to serve as the Third Party Neutral under the Proposed Procedures; and

    (c)      granting such other and further relief as the Court deems just and equitable.

This 25th day of April 2012.

**COHEN POLLOCK MERLIN & SMALL, P.C.**

Counsel to Karen Fagin White
Chapter 11 Trustee

By:   /s/ Bruce Z. Walker
      Karen Fagin White
      Georgia Bar No. 754450
      Bruce Z. Walker
      Georgia Bar No. 731260

3350 Riverwood Parkway, Suite 1600
Atlanta, GA  30339
Tel.: (770) 858-1288
Fax: (770) 858-1277
kfwhite@cpmas.com
bwalker@cpmas.com

755801v1

11

# EXHIBIT 1

### IN THE UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| NHG LIQUIDATION, INC., f/k/a Napa | ) | Case No. 11-69828-JB |
| Home & Garden, Inc., | ) | |
| | ) | |
| Debtor. | ) | |

## PROPOSED PROCEDURES FOR LIQUIDATION OF
## PERSONAL INJURY AND PROPERTY DAMAGE CLAIMS

### PART I:  DEFINITIONS

As used herein, the following terms have the meaning set forth below:

Bar Date:     April 2, 2012.

Claim: A request for payment for Damages pursuant to the Claims Procedure.

Claims Procedure:     The process set forth in Part III, Section 4 of this Proposal whereby Third Party Neutral evaluates all Claims submitted on or prior to the Bar Date and determines pursuant to Pro Rata Distribution Factors the pro rata distribution of funds available to Personal Injury Claimants for all Occurrences involving NHG Products as set forth in a Claim.

Court: The United States Bankruptcy Court for the Northern District of Georgia

Damages:     All past, present and future damages of every kind and description  arising out of the use of NHG Products including but not limited, to property damage, bodily injury, physical injury, personal injury, wrongful death, loss of income or earning capacity, loss of insurability, hospital expenses, medical expenses, drug expenses, therapy expenses, counseling expenses, educational expenses, pain and suffering, scarring, permanent disfigurement, fear and anxiety, loss of enjoyment of a full life, loss of consortium, and all other expenses or obligations, [both known and unknown, whether based on a tort, contract, or other legal theory of recovery.

Debtor:     NHG.

Debtor Contributed Funds:    Funds, other than Insurance Proceeds, tendered by NHG, pursuant to Part III, Section 1, Paragraph (e) of this Proposal, for the benefit of claimants inclusive of Personal Injury Claimants and distributed pursuant to this Proposal.

Insurance:     Any and all insuring agreements that may cover Damages asserted by Personal Injury Claimants specifically identified herein.

1

760991-2

Insurance Proceeds:    Any and all funds tendered by the Insurer pursuant to Insurance.

Insurer:    Allied Insurance Company and AMCO Insurance Company, Nationwide Affiliated Insurers.

NHG:  NHG Liquidation, Inc. f/k/a Napa Home & Garden, Inc., a California corporation, but not Other Defendants.

NHG Products:    Any and all firepots and pourable eco-gel fuel sold under the names NAPAfire and FIREGEL that were manufactured and/or distributed by NHG prior to being recalled by the Consumer Products Safety Commission on June 22, 2011.

Occurrence:    Means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, as generally defined in the ISO Properties, Inc. Commercial General Liability Coverage Form, CG 00 01.

Other Defendants:    Any and all persons, corporations, and/or legal entities with legal responsibility for an Occurrence involving NHG Products other than NHG and including, but not limited to, those identified on Exhibit B.

Other Policies:    Any and all insuring agreements issued to NHG that may cover the Damages asserted by Personal Injury Claimants not specifically identified herein.

Parties to the Proposal:    Karen Fagin White, Chapter 11 Trustee of NHG Liquidation, Inc. and PICC.

Personal Injury Claimants:    Any and all individuals who suffered Damages, including personal injury, wrongful death and property damage claims arising out of the use of the Debtor's "Firelite" products as a result of an Occurrence involving NHG Products.

PICC:    All persons, and their attorneys, identified on Exhibit A, attached hereto, who presently intend to assert a Claim against NHG for Damages arising out of the use of NHG Products on or prior to the Bar Date pursuant to the Claims Procedure and who consent to this Proposal.

Policy #1:    Policy no. ACP BPWC 7113714050 issued by Insurer that provides coverage for an Occurrence during November 17, 2009 – November 17, 2010.

Policy #2:    Policy no. ACP CAA 7113714050 issued by Insurer that provides coverage for an Occurrence during November 17, 2009 – November 17, 2010.

Policy #3:    Policy no. ACP BPW 7113714050 issued by Insurer that provides coverage for an Occurrence during October 25, 2010-November 17, 2010.

Policy #4:    Policy no. ACP BPWC 7123714050 issued by Insurer that provides coverage for an Occurrence during November 17, 2010 – November 17, 2011.

760991-2

Policy #5:    Policy No. ACP BPW 7123714050 issued by Insurer that provides coverage for an Occurrence during November 17, 2010 – August 1, 2011.

Policy #6:    Policy no. ACP CAA 7123714050 issued by Insurer that provides coverage for an Occurrence during November 17, 2010 – November 17, 2011.

Pro Rata Distribution Factors:    The factors set forth in Part III, Section 5 of this Proposal which govern the Third Party Neutral's evaluation of all Claims submitted on or prior to the Bar Date and the pro rata distribution of funds awarded to Personal Injury Claimants for all Occurrences involving NHG Products.

Proof of Claim:    A Claimant's written filing of B10 (Official Form 10) (12/07) or similar filing made pursuant to the Court's claims bar notice.

Third Party Neutral:    An individual appointed by Order of the Court for liquidation of the Claims. The Parties to this Proposal recommend Rodney A. Max for this position.

Trustee:    Karen Fagin White, Chapter 11 Trustee of NHG Liquidation, Inc.

## PART II: RECITALS

1. NHG is currently a debtor in a Chapter 11 bankruptcy case and faces Claims by Personal Injury Claimants that are substantially in excess of NHG's Insurance and assets.

2. The Trustee has negotiated with PICC in good faith in order to resolve these claims in a procedure that is fair and equitable to all Personal Injury Claimants given the limited pool of Insurance Proceeds and assets available.

3. PICC has negotiated with the Trustee in good faith in order to resolve these claims in a procedure that is fair and equitable to all Personal Injury Claimants given the limited pool of Insurance Proceeds and assets available and allow the Personal Injury Claimants to pursue Other Defendants in an attempt to recover their full measure of Damages.

4. Trustee represents and acknowledges: (i) that she and her attorneys have conducted whatever investigation was deemed necessary by her to ascertain all facts and matters related to this document; (ii) that she has consulted with and received advice from legal counsel concerning this document and (iii) that she is not relying in any way on any statement or representation by PICC and by PICC's attorneys except as expressly stated herein in reaching the decision to propose these procedures.

5. Trustee forever waives all rights to assert that this document was the result of duress, coercion, or mistake of law or fact.

6. PICC represents and acknowledges: (i) that they and their attorneys have conducted whatever investigation was deemed necessary to ascertain all facts and matters related to this document; (ii) that they have consulted with and received advice from legal counsel concerning this document and (iii) that they are not relying in any way on any statement or representation by the Trustee and her attorneys except as expressly stated herein in reaching the decision to agree to this document.

7. PICC forever waives all rights to assert that this document was the result of duress, coercion, or mistake of law or fact.

760991-2

8.  Any rule of construction to the effect that any ambiguities are to be resolved against the drafting party will not be employed in any interpretation of this document.

## PART III: PROCEDURES

For the reasons set forth above, and in consideration of the mutual agreements, undertakings, and promises made herein, Trustee and PICC agree as follows:

1.  PROPERTY FOR DISTRIBUTION ON CLAIMS.
    (a)  NHG's Insurance provides coverage to Personal Injury Claimants for Damages as a result of an Occurrence involving NHG Products.
    (b)  $15,000,000.00 of the Insurance Proceeds, while property of the NHG bankruptcy estate, are in fact specifically earmarked only for the benefit of the Personal Injury Claimants and PICC.
    (c)  Pursuant to the Court's Order entered on April 18, 2012, the Insurer will tender the amount of $15,100,000.00 to NHG in satisfaction of Policy #1, Policy #2, Policy #3, Policy #4, Policy #5, and Policy #6.
    (d)  The sum of $100,000.00 of the amount tendered pursuant to paragraph 1(c) above will be earmarked only for the Third Party Neutral's actual time and reasonable expenses incurred in the administration of Claims Procedures. Should the Third Party Neutral fees and expenses be less than the total $100,000.00 described here, such remaining funds will be applied toward Chapter 11 Trustee fees and costs associated with insurance matters.

2.  DEBTOR'S CONTRIBUTED FUNDS:   Debtor's Contributed Funds shall be subject to the Personal Injury Claimants', and PICC claims. Such payment contemplated herein of the Debtor Contributed Funds would be paid pro rata with other allowed general unsecured claims.

3.  INSURANCE PROCEEDS: The Proceeds from Policy #1, Policy #2, Policy #3, Policy #4, Policy #5, and Policy #6 shall be distributed by the Trustee after determination and liquidation of the PICC claims by the Third Party Neutral for all Claims regardless of the date of injury. Trustee further agrees that she shall not claim a Trustee's percentage fee payable from the Insurance Proceeds for intake or distribution of the Insurance Proceeds. Any compensation sought would be payable only from the general assets of the NHG bankruptcy estate or the additional funds paid by the Insurer for the Third Party Neutral's fees and expenses, subject to Bankruptcy Court approval.

4.  CLAIMS PROCEDURE:     The PICC and the Trustee hereby consent, and agree to take any and all action(s) necessary to effectuate the following Claims Procedure:
    (a)  All Personal Injury Claimants who are part of the PICC and have submitted a Claim by the Bar Date have agreed to submit to the Third Party Neutral via email at ramax@uww-adr.com (or fax to 386-255-7722) such supporting materials that the Third Party Neutral requests by May 2, 2012. All Personal Injury Claimants who are not part of the PICC but have otherwise submitted a Claim prior to the Bar Date shall also submit such supporting materials **no later than June 5, 2012**. Specifically, all Personal Injury Claimants shall submit a form addressing all factors enumerated in Part III, Section 5, Paragraph (a)

760991-2

(For Claims involving Bodily Injury) **or** all factors enumerated in Part III, Section 5, Paragraph (b) (For Claims involving Wrongful Death). **Failure to submit the appropriate form and the majority of the supporting materials by the applicable deadline, absent a pre-deadline extension granted in writing by the Third Party Neutral, or the Court shall result in the Claim being barred and waived.**

(b)    Thereafter, Third Party Neutral shall review the materials that have been submitted.

(c)    The Third Party Neutral shall conduct such interviews as are requested by phone, or upon the Personal Injury Claimant's request and expense, in person or by videoconferencing. The Third Party Neutral shall identify dates of availability to conduct such interviews.[1] Said interviews shall be for thirty (30) minutes or, at the request of the Personal Injury Claimant, for an extended period. Said interviews may be with the Personal Injury Claimant, and his/her attorney or such other person serving as a representative of the Personal Injury Claimant's interests. Said interviews may be monitored by any other Personal Injury Claimant or attorney for any other Personal Injury Claimant so as to provide transparency to the interview process.  Said interview shall include clarification of the Personal Injury Claimant's submission and any comment by or on behalf of the Personal Injury Claimant or his/her attorney or other representative as is deemed necessary. The interview may also include questions by the Third Party Neutral as well as questions and/or comments by others monitoring said interview.

(d)    Thereafter, the Third Party Neutral shall, with the assistance of such administrative staff as he or she deems in his or her professional opinion to be reasonably necessary, but no later than ninety (90) days days after the Bar Date, award each Claim an award of damages pursuant to the applicable set of factors set forth in Part III, Section 5 below.    The awards shall be totaled, with each award being assigned its respective percentage of available funds.  Additionally, that award and pro rata distribution shall be used solely for purposes of the Court's claims process and shall **not** be used in any other manner, including but not limited to, valuing the Personal Injury Claimants' claims against other Defendants in any other third party settlement negotiations, litigation or later trials should such be necessary in any individual claimants' cases outside of the Court.

(e)    The Third Party Neutral shall notify Personal Injury Claimants via First Class United States Mail or another reliable method of written communication, including facsimile and electronic mail, of their pro rata distribution(s) and an explanation thereof, within seven (7) days of his or her decision.

(f)    Upon request by any Personal Injury Claimant within five (5) days of receipt of the notification described in 5(e) above, the Third Party Neutral shall produce a written explanation of his or her decisions and a chart, grid or other demonstrative diagram reflecting his or her decisions.  All names and other identifying information for all other Personal Injury Claimants in any such written explanation, chart, grid, or other demonstrative diagram shall be redacted and shall not be disclosed. The Third Party Neutral shall respond within ten (10) days of receipt of any Personal Injury Claimant's request. Personal Injury Claimants shall have the duty to maintain updated contact information with Third Party Neutral.

---

[1] The Third Party Neutral will conduct interviews in May and possibly June for any Personal Injury Claimants requesting an interview.

760991-2

(g)  Within five (5) days of a Personal Injury Claimant's receipt of Third Party Neutral's response pursuant to 5(f) above, Personal Injury Claimants may request reconsideration of Third Party Neutral's award determination, by filing via fax or email such request with the Third Party Neutral. Requests for reconsideration shall be limited to clerical error, omission, abuse of discretion and/or legal error.

(h)  The Third Party Neutral shall respond to requests for reconsideration and render final pro rata awards no later than ten (10) days following the applicable reconsideration filing.

(i)  No later than fourteen (14) days following the Third Party Neutral's deadline in 5(h) above, the Third Party Neutral shall notify the Court of his awards and request a hearing concerning the proposed pro rata distributions.

(j)  Upon approval and Order of the Court regarding the awards, funds shall promptly be disbursed to the Personal Injury Claimants.

(k)  The information or documents that are authored, borne, created, distributed, evaluated, prepared, received, sent or in any way used as part of the Third Party Neutral's evaluation as detailed herein are not admissible, binding or discoverable for any other case, claim, lawsuit, matter, purpose or reason except as set forth herein, including, but not limited to the Third Party Neutral's determination.

(l)  Third Party Neutral's award, conclusions, and/or product shall not be utilized by any Personal Injury Claimant or other party for the purpose of establishing payments to Personal Injury Claimants, absent prior written authority by the Trustee.

5. PRO RATA DISTRIBUTION FACTORS: The Third Party Neutral shall consider the following factors in rendering pro rata awards:

(a)  For Claims involving Bodily Injury:

i.  The necessary and reasonable past medical expenses caused by an Occurrence involving NHG Products such as amounts necessarily paid for all medical care and treatment, including, but not limited to hospital expenses, doctors' bills, surgical and other procedures, medications and medicines, and for nursing, home care and all therapies to date. The actual amount paid by the Personal Injury Claimant is not dispositive on the issue of the reasonable value of past medical services. Instead, the amount billed prior to any payment from a secondary source and the present value of those services received shall be considered. Additionally, the Personal Injury Claimant shall advise the Third Party Neutral of any rule or law that impinges on the necessary and reasonable past medical expenses and any compromise thereof.

ii.  Future medical and rehabilitative expenses that are the natural and proximate result of an Occurrence involving a NHG Product.

iii.  Lost wages that are the natural and proximate result of an Occurrence involving a NHG Product.

iv.  Lost future earning capacity.

v.  Lost household services that are the natural and proximate result of an Occurrence involving a NHG Product.

vi.  Lost educational, vocational, and social opportunities that are the natural and proximate result of an Occurrence involving a NHG Product.

6

760991-2

vii.     Pain and Suffering that are the natural and proximate result of an Occurrence involving a NHG Product.

viii.    Disfigurement and Disability that are the natural and proximate result of an Occurrence involving a NHG Product.

ix.      Emotional and Mental Distress that are the natural and proximate result of an Occurrence involving a NHG Product.

x.       Loss of Consortium that is the natural and proximate result of an Occurrence involving a NHG Product.

xi.      Loss of enjoyment of life that is the natural and proximate result of an Occurrence involving a NHG Product.

xii.     The percentage of Total Body Area burned.

xiii.    The severity of burns, i.e., Third, Second, and First Degree.

xiv.     The number of days that the Personal Injury Claimant was hospitalized as a natural and proximate result of an Occurrence involving a NHG Product.

xv.      The number of surgical procedures that the Personal Injury Claimant has experienced as a natural and proximate result of an Occurrence involving a NHG Product.

xvi.     The age of the Personal Injury Claimant at the time of the Occurrence and his or her life expectancy.

xvii.    The venue in which the Personal Injury Claimant has pursued his or her claim or would have pursued his or her claim absent NHG's bankruptcy petition.

xviii.   Whether the Personal Injury Claimant is represented by Counsel as well as the experience and reputation of Personal Injury Claimant's counsel.

xix.     Whether caps on damages exist in the venue in which the Personal Injury Claimant has pursued his or her claim or would have pursued his or her claim absent NHG's bankruptcy petition.

xx.      Whether joint and several liability exists in the venue in which the Personal Injury Claimant has pursued his or her claim or would have pursued his or her claim absent NHG's bankruptcy petition.

xxi.     Whether contributory negligence or comparative fault exist in the venue in which the Personal Injury Claimant has pursued his or her claim or would have pursued his or her claim absent NHG's bankruptcy petition.

xxii.    Any facts, under the law in the venue in which the Personal Injury Claimant has pursued his or her claim or would have pursued his or her claim absent NHG's bankruptcy petition, that could be deemed comparative or contributory fault.

xxiii.   Whether the Personal Injury Claimant was an actor or bystander at the time of the Occurrence.

xxiv.    Whether the Personal Injury Claimant had consumed alcohol at the time of the Occurrence.  If so, whether a blood alcohol test was performed and any results of such test.

xxv.     In addressing factors (i) through (xxiv) above, the Personal Injury Claimant may submit the following attachments: Incident Report; condensed medical records, including Medical History, Discharge Summary or Surgical Report; life care plan/economic report; a video lasting less than twenty (20) minutes in

7

duration; and not more than fifteen (15) photos divided between before the Occurrence, shortly after the Occurrence, and recent photos.

(b) For Claims involving Wrongful Death:

    i.    The age of the decedent at the time of the Occurrence and his or her life expectancy.

    ii.    The beneficiaries, as well as their ages and relationship, of the decedent.

    iii.    The beneficiaries' pecuniary loss, mental shock and suffering, wounded feelings, grief and sorrow, loss of companionship, and deprivation of the use and comfort of the decedent's society, including the loss of his or her experience, knowledge, and judgment in managing his or her affairs and the affairs of his or her beneficiaries.

    iv.    All damages that the Personal Injury Claimant would have been able to recover as a natural and proximate result of an Occurrence involving a NHG Product had he or she lived, including, lost wages, medical expenses, funeral expenses, conscious pain and suffering, and those set forth in Part III, Section 6, Paragraph (a).

    v.    The venue in which the Personal Injury Claimant has pursued his or her claim or would have pursued his or her claim absent NHG's bankruptcy petition.

    vi.    Whether the Personal Injury Claimant is represented by Counsel as well as the experience and reputation of Personal Injury Claimant's counsel.

    vii.    Whether caps on damages exist in the venue in which the Personal Injury Claimant has pursued his or her claim or would have pursued his or her claim absent NHG's bankruptcy petition.

    viii.    Whether joint and several liability exists in the venue in which the Personal Injury Claimant has pursued his or her claim or would have pursued his or her claim absent NHG's bankruptcy petition.

    ix.    Whether contributory negligence or comparative fault exist in the venue in which the Personal Injury Claimant has pursued his or her claim or would have pursued his or her claim absent NHG's bankruptcy petition.

    x.    Any facts, under the law in the venue in which the Personal Injury Claimant has pursued his or her claim or would have pursued his or her claim absent NHG's bankruptcy petition, that could be deemed comparative or contributory fault.

    xi.    Whether the Personal Injury Claimant was an actor or bystander at the time of the Occurrence.

    xii.    Whether the Personal Injury Claimant had consumed alcohol at the time of the Occurrence. If so, whether a blood alcohol test was performed and any results of such test.

    xiii.    In addressing factors (i) through (xii) above, the Personal Injury Claimant may submit the following attachments: Incident Report; condensed medical records, including Medical History, Discharge Summary or Surgical Report; life care plan/economic report; a video lasting less than twenty (20) minutes in duration; and not more than fifteen (15) photos divided between before the Occurrence, shortly after the Occurrence, and recent photos.

(c) For Claims involving Property Damage:

    i.    The actual damages, loss of use, depreciation, and any other property damages which are the direct and proximate result of an Occurrence.

    ii.    In considering damage to chattel which is a total loss, the appropriate measure of damages is the market value of the chattel at the time of the Occurrence.

    iii.    In addressing these factors, the Personal Injury Claimant may submit the following attachments: Incident Report; not more than 15 before and after photographs of the property and/or chattel that was damaged; receipts, invoices; and/or estimates for repair.

6.  <u>NATURE OF PAYMENTS</u>.  Any and all money recovered by Personal Injury Claimants from NHG and the Insurance Proceeds constitutes compensatory Damages because of personal physical injuries arising from an Occurrence within the meaning of Section 104(a)(2) of the Internal Revenue Code.  PICC acknowledges that the Trustee makes no representation or warranty to PICC regarding what tax treatment this document and any money recovered pursuant to this document will be given by the applicable taxing authorities under any applicable tax laws, and each Personal Injury Claimant shall be solely responsible for payment and satisfaction of his/her own tax liability which may arise out of this Proposal and the recovery of any money pursuant to it.

7.  <u>PARTIAL RELEASE AND DISCHARGE</u>.   In exchange for receiving a distribution, each Personal Injury Claimant shall execute the Release described in detail in the settlement motion filed with the Court on March 20, 2012 (doc. 341).

8.  <u>PARTIAL RELEASE WITH RESERVATION OF CLAIMS</u>.  The parties acknowledge that this document contemplates only a partial release, settlement, compromise, and accord and satisfaction <u>as to NHG only</u>, for any and all claims for Damages arising out of an Occurrence involving an NHG Product, as contemplated and defined in the cases of *Posey, et al v. Medical Center West, Inc.*, 257 Ga. 55 (1987) and *Harris v. Hanna Creative Enterprises*, 263 Ga. 774 (1994).  It is expressly understood by the parties that this document shall in no way limit Personal Injury Claimants' recovery efforts and claims prosecution against Other Defendants. This shall not be deemed to be monetary consideration. Nothing herein, including the terms, conditions and undertakings stated herein to be made or performed on behalf of NHG shall be deemed to be monetary consideration to any Personal Injury Claimant. In exchange for the consideration described herein including payment on the claims through the process set forth in any plan of reorganization or liquidation, the Personal Injury Claimants waive their right to have a court, other than the Court, adjudicate those claims.

9.  <u>CONSENTS</u>.  NHG and the Trustee consent to this document and the undertakings and payments made hereunder.  They shall be estopped or otherwise barred from asserting any claim or cause of action they have against Personal Injury Claimants arising out of an Occurrence involving an NHG Product.

10. <u>MISCELLANEOUS</u>.   As used in this document, the masculine, feminine or neuter gender, and the singular or plural number, shall include the others whenever the context so indicates.   All cross-references in this document, unless specifically directed to another agreement or documents, refer to provisions within this document.

EXHIBIT "A"

| Counsel | Claimants |
|---|---|
| **Motley Rice LLC**<br>**T. David Hoyle, Esq.**<br>**Kevin R. Dean, Esq.**<br>**Anne McGinness Kearse, Esq.**<br>28 Bridgeside Blvd<br>Mt. Pleasant SC 29464 | Jeanne Baker<br>Mary Lelia Bryan<br>Dennis Garcia<br>Jenny Mummert<br>Mark Mummert<br>Dorothy Smilowitz<br>Rachael Smilowitz<br>Kenneth Smilowitz<br>Kelsey McNutt<br>Tyler Smith<br>Brian Thoss<br>Matthew Wykoff |
| **Motley Rice LLC & Co-Counsel-**<br>**W. Doug Smith, Esq.**<br>Johnson, Smith Hibbard& Wildman LLP<br>PO Drawer 5587<br>Spartanburg, SC 29304 | Barbara Satterfield<br>Rick Satterfield<br>Randy Satterfield<br>Susan Satterfield |
| **Motley Rice LLC & Co- Counsel**<br>**W. Kirk Davenport, Esq.**<br>Davenport, Lavette & Cleckler, P.C.<br>PO Box 360186<br>Birmingham, AL | Dr. Arrtie Patil |
| **Motley Rice LLC & Co-Counsel**<br>**Jeffrey F. Putnam, Esq.**<br>Law Office of Jeffrey F. Putnam, PC<br>6790 Grover St. Ste 250<br>Omaha, NE 68106 | Mary & Robert Baber |
| **Motley Rice LLC & Co-Counsel**<br>**Jeffrey T. Webbm, Esq.**<br>Webb Law Firm, PLLC<br>PO Box 452<br>Carthage, MS 39051 | Shelby Gregory |
| **Motley Rice LLC & Co-Counsel**<br>**Andrew W. Hutton, Eqs.**<br>Hutton & Hutton<br>PO Box 638<br>Wichita, KS 67201-0638 | Karen Pahls |
| **Motley Rice LLC & Co-Counsel**<br>**Denise A. Dickerson, Esq.**<br>Sutter O'Connell<br>3600 Erieview Tower<br>1301 East 9th Street, Cleveland OH 44114 | Kelli E. Kirch & Lonnie Cornwell |

| | |
|---|---|
| **Andrew S. Buzin, Esq.**<br>The Jacob D. Fuchsberg Law Firm, LLC<br>500 5th Avenue, Suite 45<br>New York, NY 10010 | |
| **Joseph A. White, Esq.**<br>Fried & Bonder, LLC<br>White Provision, Suite 305<br>1170 Howell Mill Road, NW<br>Atlanta, GA 30318 | David Classen |
| **David Townend, Esq.**<br>Ted B. Lyon & Associates<br>18601 IBJ Freeway,<br>Town East Tower Suite 525<br>Mesquite, TX 75150 | |
| **Donald L. Gibson, Esq.**<br>Driscoll & Gibson<br>1000 Plain Street,<br>Marshfield, MA 02050 | Cheryl& John Ryan |
| **Dylan Brennan, Esq.**<br>Cellino & Barnes<br>600 Old County Road, Suite 500<br>Garden City, NY 11530 | Michael Hubbard |
| **Phillip Lee Brown, Esq.**<br>**Eric Porterfield, Esq.**<br>The Brown Law Firm<br>St. Paul Place<br>750 N. St. Paul, Suite 1680<br>Dallas, TX 75201 | Jennifer & Christopher Hernandez |
| **Erroll J. Haythorn, Esq.**<br>Gill & Chamas, LLC<br>P.O. Box 760<br>Woodbridge, NJ 07095 | Rhonda McHugh |
| **F. Gregory Barnhart, Esq.**<br>Searcy Denney Scarola & Shipley, P.A.<br>2139 Palm Beach Lakes Blvd.<br>West Palm Beach, FL 33409 | Jacqueline & Rene Delgado |
| **Gerald A. King, Esq.**<br>Armstrong Teasdale, LLP<br>2345 Grand Blvd., Suite 2000<br>Kansas City, MO 64108 | Pam Polson |
| **Walter Ulman, Esq.**<br>Ely Bettini Ulman and Rosenblatt<br>3200 North Central Avenue Suite 1930<br>Phoenix, Arizona 85012 | John Cowan |

| | |
|---|---|
| **John H. Klemeyer, Esq.**<br>Klemeyer, Farley & Bernathy, LLC<br>402 Broad Street<br>Milford, PA 18337 | Peter Lynch |
| **(Bob) Robert A. Royer, Esq.**<br>**Patrick Hart, Esq.**<br>The Scanlon Group<br>50 South Main St., Suite 504 | Zachary Pariano |
| **Paul B. Catania, Esq.**<br>Catania & Catania, P.A.<br>Bank of America Plaza, Suite 2400<br>101 East Kennedy Blvd.<br>Tampa, FL 33602 | Tricia O'Toole |
| **Brian J. Panish, Esq.**<br>**Robert Glassman, Esq.**<br>**Tom Schultz, Esq.**<br>Panish, Shea & Boyle LLP<br>11111 Santa Monica Blvd.<br>Suite 700<br>Los Angeles, CA 90025 | Vicki Heinemann/Ola Marie Addante<br>Lauren Levitt |
| **Samuel P. King, Esq.**<br>Dellecker Wilson King McKenna & Ruffier, LLP<br>719 Vassar Street<br>Orlando, FL 32804 | Brent & Tracy Miller |
| **Stephen J. Pajcic, III, Esq.**<br>Pajcic & Pajcic<br>One Independent Drive<br>Suite 1900<br>Jacksonville, FL 32202-5013 | Ann B. Boney<br>Dr. Scott Colquhoun, MD |
| **William J. Ronalter, Esq.**<br>Shipman & Goodwin, LLP<br>One Constitution Plaza<br>Hartford, CT 06103-1919 | Gregory Kriss |
| **Alexander J. Palamarchuk, Esq.**<br>Alan L. Frank Law Associates, P.C.<br>135 Old York Road,<br>Jenkintown, PA 19046 | Maria & Timothy Kepp |
| **David A. Domina, Esq.**<br>Domina Law Group, PC LLO<br>2425 S. 144th Street<br>Omaha, NE 68144 | Jamie Perez<br>Kimberly Robert |

| | |
|---|---|
| **Jordon Merson, Esq.**<br>**John P. Beatty, Esq.**<br>Kramer, Dillof, Livingston & Moore<br>217 Boardway, 10th FL<br>New York, NY 1007 | Nick Stone<br>Jonathan Mitzman |
| **Paul Landis, Esq.**<br>Fayssoux Law Firm, PA<br>209 E. Washington St.<br>Greenville, SC 29601 | Kristen & Cary Munafo |
| **James W. Haskins, Esq.**<br>Young, Haskins, Mann, Gregory, McGarry & Wall, P.C.<br>PO Box 72 (24114-0072)<br>400 Starling Avenue<br>Martinsville, VA 24112 | Phyllis Q. Karavatakis |
| **Michael Anderson, Esq.**<br>Anderson Agostino & Keller<br>131 S. Taylor St.<br>South Bend, IN 46601 | Sandi Grove |
| **David E. Haynes, Esq.**<br>The Cochran Firm<br>1100 New York Ave., NW, Suite 340 West Tower<br>Washington, DC 2005 | Rebecca Hart |
| **John A. Willis, Esq.**<br>FOX & FARLEY<br>310 N. Main Street<br>Clinton, TN 37716 | Swann Jaffurs |
| **Michael T. Van der Veen, Esq.**<br>Kats, Van der Veen & Associates<br>1 Bustleton Pike<br>Feasterville, PA 19053 | Kate McDevitt<br>Alex Getz |
| **Alan Bart Grant, Esq.**<br>Mauro, Savo, Camerino, Grant & Schalk, P.A.<br>77 North Bridge Street<br>Somerville, NJ 08876 | Jack Butler Norman III |
| **Randy M. Weber, Esq.**<br>Weber Law Firm Attorneys at Law<br>9350 South Dixie Highway, Suite 1200<br>Miami, Florida 33156 | Robinson Ginsburg |
| **Robin P. Lourie, Esq.**<br>Watkins, Lourie, Roll & Chance<br>Tower Place 200, Suite 1050<br>3348 Peachtree Road NE<br>Atlanta, GA 30326 | Susan & John ZumBrunnen |

| | |
|---|---|
| **John Walton Brookman, Esq.**<br>Brookman, PLLC<br>6391 Hilldale Court<br>Forth Worth, TX 76116-5412 | Tessa Kuby Corbett<br>Todd Paul Corbett |
| **Philip Chaffee, Esq.**<br>Chaffee Law Firm, PLC<br>322 Morris Avenue, SE<br>Grand Rapids, Michigan 49503 | Elly Bainbridge |
| **Stacey Hullett Ivey, Esq.**<br>**Chris Goode, Esq.**<br>Bubalo Rotman PLC<br>1344 S. Broadway<br>Lexington, KY 40504 | |
| **J. Michael Ponder**<br>Cook, Barkett, Ponder & Wolz, L.C.<br>715 North Clark<br>P.O. Box 1180<br>Cape Girardeau, MO 63702-1180 | Lori Pech |

Case 7:12-cv-000999MFU-RSB   Document 36-1   Filed 08/20/12   Page 29 of 47   Pageid#: 245

# EXHIBIT "B"

## EXHIBIT B

1)    The Fresh Market, Inc.;
2)    Target Corporation;
3)    Bed, Bath & Beyond Inc.;
4)    HomeStyle;
5)    Ivy Stone Group, LLC;
6)    OneCoast;
7)    Rosenberg Group;
8)    More Turns LLC;
9)    Wahlberg Associates;
10)   SnapRetail;
11)   Design FX;
12)   Design Home;
13)   Hallmark Cards, Inc.;
14)   The TJX Companies, Inc.;
15)   T.J. Maxx;
16)   Marshalls Home Goods;
17)   Marshalls, Inc.;
18)   Direct Furniture, From the Source, LLC;
19)   Design Direct USA;
20)   Easy Plastic Containers, Ltd.;
21)   Earth Inspired Living, LLC;
22)   JAdore, Inc.;
23)   The Brass Exchange, Inc.;
24)   Avondale Gift Boutique, Inc.;
25)   The Transplanted Garden, Inc.;
26)   Hyams Landscape Contractors, Inc.;
27)   Costco Wholesale Corporation;
28)   Net Health Shops, LLC d/b/a Serenity Health;
29)   S&S Drugs, Inc.;
30)   Abella Home;
31)   Southern Landscaping & Lawn Care, Inc.;
32)   Little Acre Home and Patio Furnishing;
33)   Dillard's Corporate Office;
34)   Ballard Designs;
35)   Meijer, Inc. Corporate Offices;
36)   Flower Mart by Sunrise;
37)   Neiman Marcus Group, Inc. Corporate Office.

# EXHIBIT "C"

**PRIVILEGED & CONFIDENTIAL**                    **PRIVILEGED & CONFIDENTIAL**
Attorney Work Product                                        Attorney Work Product
Attorney Client Communication                      Attorney Client Communication
**FOR SETTLEMENT PURPOSES ONLY – NOT DISCOVERABLE OR ADMISSIBLE**

## For Claims involving Bodily Injury:

Name of Claimant(s) _____

1. What are the necessary and reasonable past medical expenses caused by an Occurrence involving NHG Products such as amounts necessarily paid for all medical care and treatment, including, but not limited to hospital expenses, doctors' bills, surgical and other procedures, medications and medicines, and for nursing, home care and all therapies to date. The actual amount paid by the Personal Injury Claimant is not dispositive on the issue of the reasonable value of past medical services. Instead, the amount billed prior to any payment from a secondary source and the present value of those services received shall be considered:

    a.  $0-50,000.00
    b.  $50,000.01-250,000.00
    c.  $250,000.01-500,000.00
    d.  $500,000.01-1,000,000.00
    e.  > $1,000,000.00

2. To a reasonable degree of certainty, considering caps or limitations on damages, as well as post-trial adjustments for items such as collateral sources and structured judgments if any, the value of the future medical and rehabilitative expenses that are the natural and proximate result of an Occurrence involving a NHG Product:

    a.  $0-50,000.00
    b.  $50,000.01-250,000.00
    c.  $250,000.01-500,000.00
    d.  $500,000.01-1,000,000.00
    e.  > $1,000,000.00

3. To a reasonable degree of certainty, considering caps or limitations on damages (including mitigation of damages and failure thereof) as well as post-trial adjustments for items such as collateral sources and structured judgments if any, the value of lost wages that are the natural and proximate result of an Occurrence involving a NHG Product (with supporting financial documentation to be provided upon request):

    a.  $0-2,500.00
    b.  $ 2,500.01-25,000.00
    c.  $25,000.01-50,000.00
    d.  $50,000.01-100,000.00
    e.  > $100,000.00

PRIVILEGED & CONFIDENTIAL                       PRIVILEGED & CONFIDENTIAL
Attorney Work Product                                     Attorney Work Product
Attorney Client Communication                    Attorney Client Communication

**FOR SETTLEMENT PURPOSES ONLY – NOT DISCOVERABLE OR ADMISSIBLE**

4. To a reasonable degree of certainty, considering caps or limitations on damages (including mitigation of damages and failure thereof) and likely reductions by trial or appellate court, as well as post-trial adjustments for items such as collateral sources and structured judgments if any, the maximum value of the lost future earning capacity that is the natural and proximate result of an Occurrence involving a NHG Product (with supporting financial documentation to be provided upon request):

     a.    $0-25,000.00
     b.    $25,000.01-50,000.00
     c.    $50,000.01-100,000.00
     d.    $100,000.01-250,000.00
     e.    > $250,000.00

5. To a reasonable degree of certainty, considering caps or limitations on damages and likely reductions by trial or appellate court, as well as post-trial adjustments for items such as collateral sources and structured judgments if any, the maximum value of the lost household services that are the natural and proximate result of an Occurrence involving a NHG Product:

     a.    $0-25,000.00
     b.    $25,000.01-50,000.00
     c.    $50,000.01-100,000.00
     d.    $100,000.01-250,000.00
     e.    > $250,000.00

6. To a reasonable degree of certainty, considering caps or limitations on damages and likely reductions by trial or appellate court, as well as post-trial adjustments for items such as collateral sources and structured judgments if any, the maximum value of the lost educational, vocational, and social opportunities that are the natural and proximate result of an Occurrence involving a NHG Product (with supporting statutory and case law to be provided upon request):

     a.    $0-50,000.00
     b.    $50,000.01-250,000.00
     c.    $250,000.01-500,000.00
     d.    $500,000.01-1,000,000.00
     e.    > $1,000,000.00

PRIVILEGED & CONFIDENTIAL
Attorney Work Product
Attorney Client Communication
PRIVILEGED & CONFIDENTIAL
Attorney Work Product
Attorney Client Communication
FOR SETTLEMENT PURPOSES ONLY – NOT DISCOVERABLE OR ADMISSIBLE

7. To a reasonable degree of certainty, considering caps or limitations on damages and likely reductions by trial or appellate court, as well as post-trial adjustments for items such as structured judgments if any, the maximum value of the Pain and Suffering that are the natural and proximate result of an Occurrence involving a NHG Product (with supporting statutory and case law to be provided upon request):

   a. $0-500,000.00
   b. $500,000.01-1,000,000.00
   c. $1,000,000.01-2,500,000.00
   d. $2,500,000.01-5,000,000.00
   e. > $5,000,000.00

8. To a reasonable degree of certainty, considering caps or limitations on damages and likely reductions by trial or appellate court, as well as post-trial adjustments for items such as structured judgments if any, the maximum value of the Disfigurement and Disability that are the natural and proximate result of an Occurrence involving a NHG Product (with supporting statutory and case law to be provided upon request):

   a. $0-500,000.00
   b. $500,000.01-1,000,000.00
   c. $1,000,000.01-2,500,000.00
   d. $2,500,000.01-5,000,000.00
   e. >$5,000,000.00

9. To a reasonable degree of certainty, considering caps or limitations on damages and likely reductions by trial or appellate court, as well as post-trial adjustments for items such as structured judgments if any, the maximum value of the Emotional and Mental Distress that are the natural and proximate result of an Occurrence involving a NHG Product (with supporting statutory and case law to be provided upon request):

   a. $0-250,000.00
   b. $250,000.01-500,000.00
   c. $500,000.01-1,000,000.00
   d. $1,000,000.01-2,500,000.00
   e. >$2,500,000.00

3

PRIVILEGED & CONFIDENTIAL
Attorney Work Product
Attorney Client Communication

PRIVILEGED & CONFIDENTIAL
Attorney Work Product
Attorney Client Communication

**FOR SETTLEMENT PURPOSES ONLY – NOT DISCOVERABLE OR ADMISSIBLE**

10. To a reasonable degree of certainty, considering caps or limitations on damages and likely reductions by trial or appellate court, as well as post-trial adjustments for items such as structured judgments if any, the maximum value of the Loss of Consortium that is the natural and proximate result of an Occurrence involving a NHG Product (with supporting statutory and case law to be provided upon request):

    a.  $0-50,000.00
    b.  $50,000.01-250,000.00
    c.  $250,000.01-500,000.00
    d.  $500,000.01-1,000,000.00
    e.  > $1,000,000.00

11. To a reasonable degree of certainty, considering caps or limitations on damages and likely reductions by trial or appellate court, as well as post-trial adjustments for items such as structured judgments if any, the maximum value of the Loss of enjoyment of life that is the natural and proximate result of an Occurrence involving a NHG Product (with supporting statutory and case law to be provided upon request):

    a.  $0-250,000.01
    b.  $250,000.01-500,000.00
    c.  $500,000.01-1,000,000.00
    d.  $1,000,000.01-2,500,000.00
    e.  >$2,500,000.01

12. According to the medical records, the percentage of Total Body Area burned was:

    a.  0-5%
    b.  5-15%
    c.  15-25%
    d.  25-35%
    e.  > 35%

13. According to the medical records, the severity of burns was:

    a.  First Degree
    b.  Second Degree
    c.  Third Degree

PRIVILEGED & CONFIDENTIAL             PRIVILEGED & CONFIDENTIAL
Attorney Work Product                         Attorney Work Product
Attorney Client Communication            Attorney Client Communication
**FOR SETTLEMENT PURPOSES ONLY – NOT DISCOVERABLE OR ADMISSIBLE**

14. What is the number of days that the Personal Injury Claimant was initially, and has since been, hospitalized as a natural and proximate result of an Occurrence involving a NHG Product:

    a.  0-2
    b.  2-5
    c.  5-15
    d.  15-30
    e.  > 30 days

15. What is the number of surgical procedures that the Personal Injury Claimant has experienced as a natural and proximate result of an Occurrence involving a NHG Product:

    a.  0
    b.  1-2
    c.  3-5
    d.  5-10
    e.  > 10

16(a). The age of the Personal Injury Claimant at the time of the Occurrence:

    a.  0-20
    b.  20-35
    c.  35-50
    d.  50-65
    e.  > 65

16(b). His or her life expectancy:
    a.  0-20
    b.  20-35
    c.  35-50
    d.  50-65
    e.  > 65

17. The venue in which the Personal Injury Claimant has pursued his or her claim or would have pursued his or her claim absent NHG's bankruptcy petition:

_____ (Venue)

5

PRIVILEGED & CONFIDENTIAL                          PRIVILEGED & CONFIDENTIAL
Attorney Work Product                                          Attorney Work Product
Attorney Client Communication                    Attorney Client Communication
FOR SETTLEMENT PURPOSES ONLY – NOT DISCOVERABLE OR ADMISSIBLE

18(a). Whether the Personal Injury Claimant is represented by Counsel:

    a.  No
    b.  Yes

18(b). How many years' experience does the Personal Injury Claimant's counsel possess (a CV or firm resume may be attached):

    a.  0-5 years
    b.  5-10 years
    c.  10-15 years
    d.  15-20 years
    e.  > 20 years

19. Whether caps on damages exist in the venue in which the Personal Injury Claimant has pursued his or her claim or would have pursued his or her claim absent NHG's bankruptcy petition (statutory and case law to be provided):

    a.  Yes
    b.  No

    If Yes, explain _____

20. Whether joint and several liability exists in the venue in which the Personal Injury Claimant has pursued his or her claim or would have pursued his or her claim absent NHG's bankruptcy petition:

    a.  Yes
    b.  No

    If Yes, set forth the rules regarding joint and several liability in your venue along with controlling statute or decisional law: _____

21. Whether contributory negligence or comparative fault exist in the venue in which the Personal Injury Claimant has pursued his or her claim or would have pursued his or her claim absent NHG's bankruptcy petition:

    a.  Contributory
    b.  Comparative
    c.  Neither

    If Yes, set forth the rules regarding comparative/contributory negligence your venue has along with controlling statute or decisional law: _____

PRIVILEGED & CONFIDENTIAL      PRIVILEGED & CONFIDENTIAL
Attorney Work Product      Attorney Work Product
Attorney Client Communication      Attorney Client Communication
**FOR SETTLEMENT PURPOSES ONLY – NOT DISCOVERABLE OR ADMISSIBLE**

22. Are there any facts, under the law in the venue in which the Personal Injury Claimant has pursued his or her claim or would have pursued his or her claim absent NHG's bankruptcy petition, which could be deemed comparative or contributory fault:

     a. Yes
     b. No

If Yes, what percentage of fault would you attribute to Plaintiff based on the facts:

     1. 0-5%
     2. 5-15%
     3. 15-25%
     4. 25-50%
     5. > 50%

23. Whether the Personal Injury Claimant was an actor or bystander at the time of the Occurrence:

     a. Actor
     b. Bystander

24. Was it documented that alcohol or illicit drug consumption played a role in the Occurrence:

     a. Yes
     b. No

     If Yes, was a blood alcohol or drug test performed?

         a. Yes
         b. No

     Any results of such test: _____

25. In addressing the factors above, the Personal Injury Claimant may also submit the following attachments: Incident Report; condensed medical records, including Medical History, Discharge Summary or Surgical Report; life care plan/economic report; a video lasting less than twenty (20) minutes in duration; not more than fifteen (15) photos divided between before the Occurrence, shortly after the Occurrence, and recent photos; and, as you deem appropriate, a position statement containing explanations of any factors listed above (limited to five (5) pages).

DO YOU REQUEST AN INTERVIEW WITH THE THIRD PARTY NEUTRAL? (Yes or No)

If Yes, please specify: By Phone _____ In Person _____ By Videoconference _____

# EXHIBIT "D"

PRIVILEGED & CONFIDENTIAL                    PRIVILEGED & CONFIDENTIAL
Attorney Work Product                                    Attorney Work Product
Attorney Client Communication                  Attorney Client Communication
FOR SETTLEMENT PURPOSES ONLY – NOT DISCOVERABLE OR ADMISSIBLE

## For Claims involving Wrongful Death:

Name of Claimant(s) _____

1(a). The age of the Personal Injury Claimant at the time of the Occurrence:

      a.  0-20
      b.  20-35
      c.  35-50
      d.  50-65
      e.  > 65

1(b). His or her life expectancy:

      a.  0-20
      b.  20-35
      c.  35-50
      d.  50-65
      e.  > 65

2. How many beneficiaries did the Personal Injury Claimant have:

      a.  0
      b.  1
      c.  2
      d.  3
      e.  > 3

Please list the beneficiaries' names, ages, and relationship to the Personal Injury Claimant:

_____
_____
_____
_____.

3. What are the beneficiaries' damages, including pecuniary loss, mental shock and suffering, wounded feelings, grief and sorrow, loss of companionship, and deprivation of the use and comfort of the decedent's society, including the loss of his or her experience, knowledge, and judgment in managing his or her affairs and the affairs of his or her beneficiaries:

      a.  $0-500,000.00
      b.  $500,000.01-1,000,000.00
      c.  $1,000,000.01-2,500,000.00
      d.  $2,500,000.01-5,000,000.00
      e.  > $5,000,000.00

PRIVILEGED & CONFIDENTIAL          PRIVILEGED & CONFIDENTIAL
Attorney Work Product                        Attorney Work Product
Attorney Client Communication          Attorney Client Communication
FOR SETTLEMENT PURPOSES ONLY – NOT DISCOVERABLE OR ADMISSIBLE

4. What are the necessary and reasonable past medical expenses caused by an Occurrence involving NHG Products such as amounts necessarily paid for all medical care and treatment, including, but not limited to hospital expenses, doctors' bills, surgical and other procedures, medications and medicines, paid for nursing, home care and all therapies to date. The actual amount paid by the Personal Injury Claimant is not dispositive on the issue of the reasonable value of past medical services. Instead, the amount billed prior to any payment from a secondary source and the present value of those services received shall be considered:

    a.  $0-50,000.00
    b.  $50,000.01-250,000.00
    c.  $250,000.01-500,000.00
    d.  $500,000.01-1,000,000.00
    e.  > $1,000,000.00

5. To a reasonable degree of certainty, considering caps or limitations on damages (including mitigation of damages and failure thereof) as well as post-trial adjustments for items such as collateral sources and structured judgments if any, the value of lost wages that are the natural and proximate result of an Occurrence involving a NHG Product (with supporting financial documentation to be provided upon request):

    a.  $0-2,500.00
    b.  $ 2,500.01-25,000.00
    c.  $25,000.01-50,000.00
    d.  $50,000.01-100,000.00
    e.  > $100,000.00

6. To a reasonable degree of certainty, considering caps or limitations on damages (including mitigation of damages and failure thereof) and likely reductions by trial or appellate court, as well as post-trial adjustments for items such as collateral sources and structured judgments if any, the maximum value of the lost future earning capacity that is the natural and proximate result of an Occurrence involving a NHG Product (with supporting financial documentation to be provided upon request):

    a.    $0-25,000.00
    b.    $25,000.01-50,000.00
    c.    $50,000.01-100,000.00
    d.    $100,000.01-250,000.00
    e.    > $250,000.00

PRIVILEGED & CONFIDENTIAL                    PRIVILEGED & CONFIDENTIAL
Attorney Work Product                                       Attorney Work Product
Attorney Client Communication                    Attorney Client Communication
**FOR SETTLEMENT PURPOSES ONLY – NOT DISCOVERABLE OR ADMISSIBLE**

7. To a reasonable degree of certainty, considering caps or limitations on damages and likely reductions by trial or appellate court, as well as post-trial adjustments for items such as collateral sources and structured judgments if any, the maximum value of the lost household services that are the natural and proximate result of an Occurrence involving a NHG Product:

    a.  $0-25,000.00
    b.  $25,000.01-50,000.00
    c.  $50,000.01-100,000.00
    d.  $100,000.01-250,000.00
    e.  > $250,000.00

8. To a reasonable degree of certainty, considering caps or limitations on damages and likely reductions by trial or appellate court, as well as post-trial adjustments for items such as structured judgments if any, the maximum value of the Pain and Suffering that are the natural and proximate result of an Occurrence involving a NHG Product (with supporting statutory and case law to be provided upon request):

    a.  $0-500,000.00
    b.  $500,000.01-1,000,000.00
    c.  $1,000,000.01-2,500,000.00
    d.  $2,500,000.01-5,000,000.00
    e.  > $5,000,000.00

9. To a reasonable degree of certainty, considering caps or limitations on damages and likely reductions by trial or appellate court, as well as post-trial adjustments for items such as structured judgments if any, the maximum value of the Emotional and Mental Distress that are the natural and proximate result of an Occurrence involving a NHG Product (with supporting statutory and case law to be provided upon request):

    a.  $0-250,000.00
    b.  $250,000.01-500,000.00
    c.  $500,000.01-1,000,000.00
    d.  $1,000,000.01-2,500,000.00
    e.  >$2,500,000.00

PRIVILEGED & CONFIDENTIAL          PRIVILEGED & CONFIDENTIAL
Attorney Work Product                         Attorney Work Product
Attorney Client Communication              Attorney Client Communication
FOR SETTLEMENT PURPOSES ONLY – NOT DISCOVERABLE OR ADMISSIBLE

10. To a reasonable degree of certainty, considering caps or limitations on damages and likely reductions by trial or appellate court, as well as post-trial adjustments for items such as structured judgments if any, the maximum value of the Loss of Consortium that is the natural and proximate result of an Occurrence involving a NHG Product (with supporting statutory and case law to be provided upon request):

    a. $0-50,000.00
    b. $50,000.01-250,000.00
    c. $250,000.01-500,000.00
    d. $500,000.01-1,000,000.00
    e. > $1,000,000.00

11. The venue in which the Personal Injury Claimant has pursued his or her claim or would have pursued his or her claim absent NHG's bankruptcy petition:

_____ (Venue)

12(a). Whether the Personal Injury Claimant is represented by Counsel:

    a. No
    b. Yes

12(b). How many years' experience does the Personal Injury Claimant's counsel possess (a CV or firm resume may be attached):

    a. 0-5 years
    b. 5-10 years
    c. 10-15 years
    d. 15-20 years
    e. > 20 years

13. Whether caps on damages exist in the venue in which the Personal Injury Claimant has pursued his or her claim or would have pursued his or her claim absent NHG's bankruptcy petition (statutory and case law to be provided):

    a. Yes
    b. No

If Yes, explain _____

4

PRIVILEGED & CONFIDENTIAL                    PRIVILEGED & CONFIDENTIAL
Attorney Work Product                                  Attorney Work Product
Attorney Client Communication                  Attorney Client Communication
FOR SETTLEMENT PURPOSES ONLY – NOT DISCOVERABLE OR ADMISSIBLE

14. Whether joint and several liability exists in the venue in which the Personal Injury Claimant has pursued his or her claim or would have pursued his or her claim absent NHG's bankruptcy petition:

    a.  Yes
    b.  No

    If Yes, set forth the rules regarding joint and several liability in your venue along with controlling statute or decisional law: _____

15. Whether contributory negligence or comparative fault exist in the venue in which the Personal Injury Claimant has pursued his or her claim or would have pursued his or her claim absent NHG's bankruptcy petition:

    a.  Contributory
    b.  Comparative
    c.  Neither

    If Yes, set forth the rules regarding comparative/contributory negligence your venue has along with controlling statute or decisional law: _____

16. Are there any facts, under the law in the venue in which the Personal Injury Claimant has pursued his or her claim or would have pursued his or her claim absent NHG's bankruptcy petition, which could be deemed comparative or contributory fault:

    a.  Yes
    b.  No

    If Yes, what percentage of fault would you attribute to Plaintiff based on the facts:

    1.  0-5%
    2.  5-15%
    3.  15-25%
    4.  25-50%
    5.  > 50%

17. Whether the Personal Injury Claimant was an actor or bystander at the time of the Occurrence:

    a.  Actor
    b.  Bystander

PRIVILEGED & CONFIDENTIAL                    PRIVILEGED & CONFIDENTIAL
Attorney Work Product                                        Attorney Work Product
Attorney Client Communication                      Attorney Client Communication
**FOR SETTLEMENT PURPOSES ONLY – NOT DISCOVERABLE OR ADMISSIBLE**

18.  Was it documented that alcohol or illicit drug consumption played a role in the Occurrence:

    a.  Yes
    b.  No

        If Yes, was a blood alcohol or drug test performed?

            a.  Yes
            b.  No

        Any results of such test: _____

19. In addressing the factors above, the Personal Injury Claimant may also submit the following attachments: Incident Report; condensed medical records, including Medical History, Discharge Summary or Surgical Report; life care plan/economic report; a video lasting less than twenty (20) minutes in duration; not more than fifteen (15) photos divided between before the Occurrence, shortly after the Occurrence, and recent photos; and, as you deem appropriate, a position statement containing explanations of any factors listed above (limited to five (5) pages).

DO YOU REQUEST AN INTERVIEW WITH THE THIRD PARTY NEUTRAL? (Yes  or  No)

If Yes, please specify:  By Phone _____    In Person _____    By Videoconference _____

6

**EXHIBIT 2**



# Rodney A. Max

## Upchurch Watson White & Max

### Principal

Direct Dial: **305 / 266-1224** ♦ Toll Free: **800 / 264-2622** ♦ Cell: **786 / 423-3977**
Email: **ramax@uww-adr.com** ♦ Web: **www.uww-adr.com**

## Professional Education and Qualifications

B.A. (Political Science) University of Florida
J.D. Cumberland School of Law (cum laude)

Member: *Cumberland Law Review*
Member: *Curia Honoris*

♦ Florida Certified Circuit Court Mediator
♦ Alabama State Court Mediator Roster
♦ Neutral Panelist, U.S. District Courts of Alabama
♦ Distinguished Panel of Neutrals, CPR Institute for Dispute Resolution
♦ Mediation Panelist, Nat'l Assn. of Securities Dealers Regulation, Inc.

## Background

Rodney Max is licensed to practice law in the States of Florida and Alabama, with thirty-five years of trial and mediation experience. Mr. Max has established a highly successful national ADR practice, specializing in mediation and arbitration of mass torts, class action complex tort, commercial and consumer cases. He has mediated in 31 different states and the District of Columbia.

He has been selected and appointed for hundreds of mediations involving opt-outs in the Prudential national class action filed in the U.S. District Court of New Jersey (Judge Alfred M. Wolin). He has been selected as the Compliance Officer in the implementation of the Aetna / HMO national class action in the U.S. District Court of Florida (Judge Moreno). He has been selected and appointed to successfully mediate the largest class action in US history (Fresco v. USDC, SD FL - Judge Martinez)

Mr. Max has authored numerous articles on mediation for professional journals and seminars, and is a noted speaker on mediation throughout the country. Among the honors that Mr. Max has received on both a professional and personal level are: Distinguished Fellow of American College of Civil Trial Mediators, Law and Politics' Super Lawyers of both Florida and Alabama for mediation and ADR, and the 1998 NCCJ Brotherhood Award for Outstanding Community Service.

### Practice Experience

*Including but not limited to...*

♦ Mass Torts
♦ Class Actions
♦ Personal Injury / Wrongful Death
   - *Medical Malpractice*
   - *Product Liability*
   - *Vehicular and Industrial Accidents*
♦ Commercial & Consumer Disputes
♦ Securities
♦ Environmental Disputes
♦ Employment
♦ Insurance Disputes
♦ Trademark
♦ Anti-Trust
♦ Public Issues

## Memberships, Publications, Civic Activities

- American College of Civil Trial Mediators (Past-President, Distinguished Fellow)
- American Bar Association, Dispute Resolution Section
- Alabama Academy of Mediators
- Florida Academy of Mediators
- Author, *"Multiparty Mediation"*, The American Journal of Trial Advocacy (Volume 23, Issue 2, Fall, 1999)
- Author, *"Mediation: The Humanization of the Justice System Resulting in the Truest Equities Among the Parties"* (The Alabama Defense Lawyer Journal, 1999)
- Author, *"Designing the Mediation"*, *" Breaking The Impasse: The Unique Mediation Opportunity"*, *"A Matter of Principal: The Role of Religious Philosophies in Mediation"*, *" The Ethcial Civil Trial Mediator"*.
- State Chair, US Civil Rights Commission, Alabama State Advisory Committee, 1985-2000
- Chairman, Community Affairs Committee - Operation New Birmingham, 1995-97
- B'nai Brith Chapter President, 1976-81

Daytona Beach      *Maitland / Orlando*      *Miami*      *Birmingham*