IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

JANET L. OSBORNE, M.D., FACOG, FACS,

        Plaintiff,

v.                                                  Civil Action No. 7:12cv99

BED BATH & BEYOND, INC. and
LOSOREA PACKAGING, INC.

        Defendants.

## BRIEF SUPPORTING MOTION TO COMPEL

Bed Bath & Beyond, Inc. ("BBB"), by counsel, filed a motion to compel the Plaintiff to provide full, complete and adequate responses to BBB's pending Interrogatories and Requests for Production of Documents. Specifically, the Plaintiff failed to properly answer BBB's Interrogatories 9, 10, 11, 14, 15, 18, 23 and 25.[1] The Plaintiff also failed to sufficiently respond to BBB's Requests for Production 18, 19 and 20.[2]

On September 12, 2012, BBB's attorneys requested that the Plaintiff amend or supplement her answers to these discovery requests; however, the Plaintiff did not respond.[3] Accordingly, BBB now asks the Court to order the Plaintiff to do so.

### I. Background

The Plaintiff's Complaint asserts negligence, product defect, breach of warranty and punitive damage claims against BBB for injuries the Plaintiff sustained while her roommate was attempting to refill a fire pot with a liquid fuel gel. BBB propounded Interrogatories and

---

[1] A copy of the Plaintiff's Answers to BBB's Interrogatories is attached as Exhibit A.
[2] A copy of the Plaintiff's Responses to BBB's Requests for Production of Documents is attached as Exhibit B.
[3] A copy of the September 12, 2012, letter from BBB's attorneys to Plaintiff's counsel outlining the deficiencies in the Plaintiff's responses to discovery and requesting that the Plaintiff amend or supplement those responses is attached as Exhibit C.

{W2077471.1}

Requests for Production of Documents, which the Plaintiff answered on August 8, 2012. The Plaintiff's answers to many of BBB's discovery requests are incomplete and fail to answer the question posed. These deficiencies fall into four basic categories: (1) Osborne's answers to discovery surrounding her punitive damage claim; (2) responses to discovery about Osborne's defective product allegations; (3) responses to discovery related to the basis of Osborne's claim BBB labeled the product; and (4) responses to discovery surrounding Osborne's express warranty claims against BBB.

## II. Argument

Simply put, Osborne declined to answer discovery seeking the evidentiary basis for many of her claims, either by interposing an improper objection or by dodging the question itself. The Plaintiff is required to disclose the known facts supporting her legal theories against BBB, and having failed to do so the Court must compel appropriate answers to BBB's discovery requests.

### A. *Discovery Regarding Osborne's Punitive Damage and Gross Negligence Claims.*

Paragraph 34 of Osborne's Complaint asserts that BBB's conduct demonstrates "a want of even scant care" and "a conscious disregard of the rights of others and complete indifference by defendants to the consequences of their actions."[4] Additionally, Count Six of the Complaint pleads a claim for punitive damages against "all defendants," alleging that BBB engaged in a "pattern or practice of willful, wanton and reckless misconduct causing substantial harm and resulting in damages to the Plaintiff."[5] Count One of the Plaintiff's Complaint also includes a claim for "gross negligence" against BBB.[6]

---

[4] *See* Plaintiff's Complaint, paragraph 34.
[5] *Id.* at pages 10 and 11.
[6] *Id.* at pages 6 and 7.

2

Based on these allegations, BBB propounded Interrogatory 15 asking the Plaintiff to disclose the facts and witnesses that support her gross negligence, willful and wanton conduct, and punitive damage claims against BBB. BBB's Request for Production 20 also sought any documents that support those claims. Despite her express allegations, Osborne failed to sufficiently answer those questions.

Osborne did not identify any individual with knowledge or information supporting her punitive damage and amplified negligence claims in response to Interrogatory 15. Rather, her answer simply states that the existence of other claims shows that the "exact problems" with this product occurred before it was recalled by the manufacturer and before Osborne purchased the product from BBB. But those facts alone do not evince knowing misconduct by BBB or punitive damages. Osborne describes no evidence establishing BBB's knowledge or notice of the purported "exact problems" described in this answer. Plainly, the Plaintiff possessed a good faith basis for suing BBB for punitive damages, which includes the necessary element of knowing or reckless misconduct. She is therefore required to identify and describe all facts, witnesses and information that led her to conclude that BBB is liable for those claims. Her answers to Interrogatory 15 and Request for Production 20 are nothing more than a slight-of-hand response devoid of any actual facts that support her punitive damage allegations.

The Plaintiff's objection to Request for Production 20 based on assertions of privilege or the work-product doctrine is equally improper and the Court should strike those objections and require the Plaintiff to answer the question. Osborne's punitive damage claims must be based on specific facts, and she either has documents that establish those facts or she does not. If no documents exist in response to these questions, she is required to say that. If documents do exist, she is required to identify and produce them. The existence of facts sufficient to support her

punitive damage, gross negligence, and willful and wanton claims are not a matter of expert opinion — as Osborne asserts — but a material element of her *prima facie* case. Osborne's discovery answers are nothing more than a calculated attempt to dodge the question. The Court should stop that tactic by directing Osborne to disclose the evidence supporting her punitive damage claim by identifying the witnesses and facts she intends to present at trial to support it.

### B. *Discovery Regarding Osborne's Product Defect Allegations.*

Osborne's lawsuit alleges that BBB sold defective products that proximately caused the Plaintiff's injuries.[7] BBB's Interrogatory 9 asks the Plaintiff to specifically state whether the product defects she alleges are manufacturing or design defects. The Plaintiff declined to answer that question, incorrectly claiming that BBB is seeking an expert opinion. Plainly, whether the manufacturing process caused a defect is a fact. Whether the product is defectively designed is also a fact. Those facts may be proven by expert witness testimony; however, the facts themselves are clearly discoverable because it defines the nature of the Plaintiff's specific defect allegations. Accordingly, Osborne is required to state whether she intends to prove a manufacturing defect, a design defect, or both in response to this question, regardless of the manner of proof she ultimately elects to use to establish that fact at trial.

The Plaintiff also failed to properly answer Interrogatories 10 and 11, involving the factual basis for Osborne's claims that alternate design and manufacturing procedures would remove or mitigate the product defects alleged to cause her injuries. Again, those are factual issues, and the Plaintiff's objection that an answer calls exclusively for expert opinion testimony is improper, as is her general reference to a document memorializing a third party's conclusion. If Osborne asserts an alternate design or manufacturing procedure as a component of her defect

---

[7] *See* Plaintiff's Complaint, pages 2 through 5.

claim, she is required to specifically describe the facts and evidence she plans to present at trial to support that claim and to explain the nature of that claim. As worded, Osborne's response would require BBB to guess at its own peril about what portions of the referenced report apply do or do not apply to the Plaintiff's theories. This is the very type of "trial by ambush" the Rules of Discovery are designed to prevent. The Court should compel appropriate responses to these questions.

The Plaintiff also provided no meaningful answer to Interrogatory 23, which seeks information about the evidence supporting Osborne's contention that the products failed to conform to appropriate industry and governmental standards. Osborne clearly intends to advance that theory at trial, because her answer to BBB's Interrogatory 8 states that these products "failed to comply with all applicable industry and governmental standards for the manufacture, design and sale of said products."[8] So even though she contends that governmental and industry standards apply to these products — and that the products fail to conform to those requirements — Osborne refused to identify those standards and regulations in response to Interrogatory 23. Osborne's answer is transparently evasive and the Court should require her to explain the factual basis for her claim that these products are defective because they violate some known but applicable standards, and to produce the standards themselves in response to Requests for Production 18 and 19.

C. *Discovery Regarding Osborne's Express Warranty Claim.*

Count Five of the Plaintiff's Complaint pleads that BBB made and breached express warranties for the fuel gel that ignited and burned the Plaintiff.[9] BBB's Interrogatory 18 asks the

---

[8] See Exhibit A, page 7.
[9] See Plaintiff's Complaint, paragraphs 54 through 57.

Plaintiff to identify the facts and witnesses that support each breach of warranty allegation in her Complaint. The Plaintiff responded by interposing an improper objection that a question about the evidentiary basis for her express warranty claim is overly broad and unduly burdensome, and then answered subject to that objection by merely stating that the product exploded when used as intended. That response is deficient for two reasons.

First, the objection is improper. Asking the Plaintiff to identify the facts and witnesses that support the material elements of her express warranty cause of action against BBB is neither overly broad nor unduly burdensome. If Osborne had a good faith factual basis to sue BBB for making and violating an express warranty, it should be a simple matter indeed to explain those facts in response to the interrogatory. So the objection is unfounded and the Court should strike it.

Second, the Plaintiff's answer is completely unresponsive and ignores the question. Merely stating that the product failed when used as intended has absolutely nothing to do with the material elements of the Plaintiff's express warranty claim. In fact, that product failure could obviously occur with or without an express warranty. The Plaintiff has refused to (1) identify any facts or witnesses defining the terms of the express warranty, (2) explain how the express warranty was conveyed, (3) describe the writing or document that memorializes the express warranty, (4) detail the scope and terms of the express warranty, or (5) explain how BBB breached the warranty. The Rules of Discovery and any concept of fairness require the Plaintiff to identify the evidence she intends to present at trial to prove that BBB may have breached an express warranty, and she has utterly failed to do that in response to this interrogatory. The Court should therefore compel an appropriate response.

D. *Discovery Regarding Osborne's Product Labeling Allegations.*

Osborne apparently contends that BBB actively participated in labeling the fire gel and fire pot. Paragraph 21 of the Plaintiff's Complaint specifically asserts that "BB&B participated in the labeling process."[10] And more recently, the Plaintiff filed a Motion to Compel against BBB that asserts "BBB has engaged in a concerted effort to distort its role in the labeling . . . [of] the NAPA FIREGEL" at issue in this products liability action.[11] Yet Osborne will not disclose the basis for her accusations in response to BBB's discovery requests.

Interrogatory 14 pointedly asks Osborne to identify the facts and witnesses that support her specific allegations that BBB "participated in the labeling process." In a three sentence response, Osborne merely suggested that the appearance of BBB's name on the label "establishes its approval of all interaction in the labeling process." Obviously, denoting that BBB's name is on the label does not acknowledge the reality that someone else could put it there. Osborne failed to identify any witness that supports her contention that BBB actually labeled the products or helped in that process. Simply implying that BBB did so because its name appears on the label is an insufficient response to this question because the mere presence of BBB's name on the label does not axiomatically establish that BBB approved, applied, created, or otherwise "participated" in the labeling process as Osborne alleges. So either Osborne has no facts to support that accusation, or she has withheld those facts in response to this question.

Osborne filed a pleading with this Court accusing BBB of intentionally hiding information demonstrating that it was an active participant in designing, applying or approving the product labels. She is required to disclose all of the information underlying that claim in

---

[10] *Id.* at page 4.
[11] *See* Plaintiff's Motion to Compel against BBB, page 1 (Document 42).

discovery. Simply suggesting by implication BBB's relationship to the label falls far short of the mark. Osborne fails to identify any actual fact showing that BBB engaged in affirmative conduct related to product labeling and has not substantiated her dubious claim to this Court that BBB did so and obscured that evidence. Accordingly, the Court should compel Osborne to state expressly and specifically each and every component of evidence — including both facts and witnesses — that support her labeling allegations against BBB.

### III. Conclusion

For the reasons stated, BBB respectfully requests that the Court Order the Plaintiff to provide full, complete and appropriate responses to the specific discovery requests identified.

BED BATH & BEYOND, INC.

By Counsel

/s/ David W. Hearn
David W. Hearn (VSB No. 37347)
Justin W. Ward (VSB No. 48893)
Sands Anderson PC
1111 East Main Street, Suite 2400
Richmond, VA 23219-1998
(804) 783-7285 – phone
804-783-7291 – fax
dhearn@sandsanderson.com

CERTIFICATE OF SERVICE

I hereby certify the foregoing Brief Supporting Motion to Compel was filed electronically with the Court and mailed first class, postage pre-paid, on the 25th day of September, 2012, to the following counsel of record:

*Co-Counsel for the Plaintiff:*

Melissa W. Robinson
Johneal M. White
Glenn Robinson & Cathey
400 Salem Avenue, SW, Suite 1000
Fulton Motor Lofts
Roanoke, VA 24016

C. Kailani Memmer
Guynn Memmer & Dillon, PC
415 South College Avenue
Salem, VA 24153

*Counsel for Losorea Packaging, Inc.:*

C. Paige Bobick
Melissa Wolf Riley
McGuire Woods LLP
Court Square Building, Suite 300
310 Fourth Street, NE
Charlottesville, VA 22902-1288

/s/ David W. Hearn
David W. Hearn